UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIBEATHA M.,

                  Plaintiff,                              19-CV-730Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #19.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on June 2, 2016, alleging disability beginning October 21, 2015, at the age of 44, due to back injury, headaches, depression and neck pain. Dkt. #6, p.264.

On July 19, 2018, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Edward Pagella, at an administrative hearing before Administrative Law Judge ("ALJ"), Asad M. Ba-Yunus. Dkt. #6, pp.220-263.

Plaintiff testified that she was a high school graduate and had worked for an insurance company providing customer service for approximately 25 years before she was injured in a motor vehicle accident on October 21, 2015. Dkt. #6, pp.232-237. She testified that since the accident, she is unable to lift more than 5-10 pounds or sit, stand or walk for more than 15 minutes at a time. Dkt. #6, pp. 239 & 243-246. She walks on a treadmill 10-15 minutes at a time or walks in a nearby park with a friend, stopping on a bench for 10-15 minutes after walking for 10-15 minutes. Dkt. #6, p.246. She is depressed, angry and experiences anxiety. Dkt. #6, p.255. She can drive short distances, but experiences numbness or tingling down her leg and back pain if she drives more than 15 minutes Dkt. #6, pp.231-232. She testified that the Oxycodone she takes for pain makes her drowsy and nauseous and triggers migraine headaches 3-4 times per week, which she relieves with a cold compress and staying quiet in a dark place. Dkt. #6, pp.247-248 & 254. Plaintiff's daughter prepares meals for her and her son transfers laundry from the washer to the dryer and then removes the laundry from the dryer for plaintiff to fold. Dkt. #6, pp.248-249. She mostly uses paper plates to avoid washing dishes. Dkt. #6, p.250. She generally wears slip-on shoes because she needs assistance to tie her sneakers. Dkt. #6, p.250. She has difficulty reaching overhead to curl her hair or behind her back to fasten a bra. Dkt. #6, p.256.

The VE classified plaintiff's past work as a customer service representative, which is a semi-skilled, light exertion position. Dkt. #6, p.258. When asked to assume an individual with plaintiff's age, education and past work experience who could perform light work, except that she could only frequently crouch and crawl

and only occasionally stoop, kneel, climb ramps or stairs, climb ladders, ropes or scaffolds, the VE testified that plaintiff could perform her past work. Dkt. #6, p.259. If plaintiff was limited to sedentary work with frequent balancing, occasional reaching overhead bilaterally and no kneeling, crouching, crawling or climbing and no hazards, including unprotected heights and dangerous machinery, the VE testified that plaintiff could work as a receptionist, which is a semi-skilled, sedentary position, or as an order clerk or packer, each of which were unskilled, sedentary positions. Dkt. #6, pp.259-260. If plaintiff was unable to bend at least occasionally throughout the workday, the VE testified that plaintiff would be unable to engage in substantial gainful activity. Dkt. #6, p.261.

The ALJ rendered a decision that plaintiff was not disabled on October 3, 2018. Dkt. #6, pp.204-215. The Appeals Council denied review on May 13, 2019. Dkt. #6, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on June 5, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"). for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past

relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 21, 2015; (2) plaintiff's compression fracture, radiculopathy and chronic migraines constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work with the following limitations: frequent balancing, occasional overhead bilateral reaching, stooping and climbing ramps and stairs, and no kneeling, crouching, crawling, climbing ladders, ropes, scaffolds or hazards, including unprotected heights and dangerous machinery; and (5) plaintiff was not capable of performing her past work, but was capable of working as a receptionist, which was a semi-skilled sedentary position, or as an order clerk or packer, each of which were unskilled sedentary positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.207-214.

Mental RFC

Plaintiff argues that the ALJ failed to address her depression and adjustment disorder despite substantial evidence that they were severe impairments, and failed to account for the functional limitations imposed by such mental impairments in the RFC. Dkt. #12-1, pp.16-19.

The Commissioner responds that the ALJ acknowledged some mental health problems associated with an affective disorder, but appropriately relied upon the opinion of Dr. Ipplito and Dr. Tzetzo that plaintiff's mental health symptoms caused no more than mild limitations and were non-severe. Dkt. #17-1, pp.15-16.

An alleged impairment is deemed severe only if it significantly limits an individual's physical or mental ability to do basic work activities; slight abnormalities that have no more than a minimal effect on the ability to do basic work activities are considered not severe. SSR 96-3P, 1996 WL 374181, at *1 (July 2, 1996). The mere presence of a disease or impairment, or evidence that a person has been diagnosed or treated for a disease or impairment, is insufficient, by itself, to render a condition severe. *Lau v. Comm'r of Soc. Sec.*, 339 F. Supp.3d 421 (S.D.N.Y. 2018). For mental impairments, an ALJ assesses severity by rating the degree of functional limitation resulting from a medically determinable impairment in four functional areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 44.1520a(c)(3). Each functional area is rated on a five-point scale of none, mild, moderate, marked and extreme. 20 C.F.R. § 404.1520a(c)(4). A rating of none or mild generally results in a determination that the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1).

Upon examination by Dr. Ippolito on August 30, 2016, plaintiff reported that she had been suffering from a sad and depressed mood, low self-esteem, and had

been more distant and withdrawn from others since her accident. Dkt. #6, pp.573-574.

She also reported feeling stress and irritability related to chronic pain, financial

problems and an inability to work or perform various physical activities, as well as short-

term memory deficits and difficulty concentrating. Dkt. #6, p.574. Dr. Ippolitio observed

that plaintiff's posture was tense due to pain and discomfort and that her attention and

concentration was mildly impaired due to distractability secondary to pain. Dkt. #6,

pp.574-575. Dr. Ippolito opined that plaintiff

> presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others with no evidence of limitation. She can appropriately deal with stress with mild to moderate limitations. These limitations are due to her emotional distress.
>
> The results of the present evaluation appear to be consistent with stress-related problems, but in itself this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

Dkt. #6, p.576. Dr. Tzetzo acknowledged a psychological medically determinable

impairment, but determined that it was not of a severe nature. Dkt. #6, p.578.

The medical record reveals that plaintiff attended several counseling

sessions with the Monsignor Carr Institute between April 21, 2016 and June 6, 2018 to

address irritability and depression following her car accident. Dkt. #6, pp.461-480 &

938-964. Her treatment record indicates that she was not interested in meeting with a

psychiatrist for medication management and that medication management was not

clinically indicated. Dkt. #6, pp.467 & 472. She was assessed as needing to manage

symptoms of depression and to address stressors relating to her car accident, including recurrent thoughts of the accident and difficulty sleeping due to her injuries. Dkt. #6, p.474. On June 6, 2018, plaintiff reported that she had fewer thoughts of her accident but continued to have difficulty sleeping due to pain. Dkt. #6, p.940.

Primary care records indicate no anxiety or depression upon examination on March 9, 2016, but a referral for counseling to address symptoms of an adjustment disorder vs. PTSD as a result of the motor vehicle accident. Dkt. #6, p.968. On April 13, 2016, plaintiff reported that her symptoms were improving and that her counselor was helping her a lot. Dkt. #6, p.971. Her primary care provider opined that it was most likely an adjustment disorder causing her low mood and noted that plaintiff did not believe she needed medication. Dkt. #6, p.972. Plaintiff reported depression and requested medication on February 28, 2017, but had discontinued the antidepressant as of April 20, 2017 when she reported feeling better. Dkt. #6, pp.982 & 985-986. She reported feeling down and depressed on December 12, 2017 and was prescribed a different antidepressant, which she discontinued as of April 24, 2018. Dkt. #6, pp.995 & 1002.

The ALJ acknowledged "mention of some mental health problems associated with an affective disorder," but properly relied upon the opinion of the consulting psychiatric examiner, Janine Ippolito, Psy.D., and the reviewing medical consultant, Hillary Tzetzo, M.D., in determining that plaintiff's mental impairments were non-severe. Dkt. #6, p.210. "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security

-8-

disability." *Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010). Moreover, nothing in plaintiff's treatment records contradict these opinions or otherwise suggest that plaintiff was not capable of performing the basic mental demands of either unskilled or semi-skilled work. *See, e.g,. Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."), *quoting Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996).

### Listing 1.04A

Plaintiff argues that despite evidence that plaintiff met Listing 1.04A, the ALJ failed to reference the Listing or properly evaluate whether plaintiff met the criteria for disability due to a spinal disorder. Dkt. #12-1, pp.19-23.

The Commissioner responds that plaintiff failed to meet her burden of proving that her spinal impairment met a Listing. Dkt. #17-1, p.16. Although the ALJ failed to specifically identify Listing 1.04A, the Commissioner argues that the ALJ clearly evaluated plaintiff's claim as a spinal impairment and properly determined that she did not meet the criteria for disability under this listing. Dkt. #17-1, pp.17-20. Specifically, the Commissioner argues that the ALJ properly determined that plaintiff's symptoms were inconsistent and responded to treatment and did not, therefore, satisfy all of the criteria at any given time, let alone for the duration required for a finding of disability. Dkt. #17-1, pp.18-19.

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp.2d 252, 272 (N.D.N.Y. 2009). To meet the requirements of a listing, plaintiff must demonstrate that her medically determinable impairment satisfies all of the specified criteria in a Listing. *Id. citing* 20 C.F.R. § 404.1525(d). If plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id., quoting Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Where the plaintiff's symptoms, as described by the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the plaintiff failed to meet or equal the Listings. *Kuleszo v. Barnhart*, 232 F. Supp.2d 44, 52 (W.D.N.Y. 2002).

An ALJ's unexplained conclusion at step three of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence. *Ryan v. Astrue*, 5 F. Supp.3d 493, 507 (S.D.N.Y. 2014). Stated another way, an ALJ's failure to consider whether a medically determinable impairment satisfied a Listing may be deemed harmless where no view of the evidence would support a finding that plaintiff's impairment met all the specified medical criteria of the Listing. *Casillas v. Comm'r of Soc. Sec.*, 19-CV-629, 2020 WL 4283896, at *6 (W.D.N.Y. July 27, 2020).

> Listing 1.04A sets forth the following criteria:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

> resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. As clarified by Acquiescence Ruling ("AR") 15-1(4), which is afforded substantial deference, Listing 1.04A is only met when all of the medical criteria listed in paragraph A are simultaneously present on examination and continue (or can be expected to continue), for at least 12 months. *Ramirez Moralez v. Berryhill*, 17-CV-6836, 2019 WL 1076088, at *3-4 (W.D.N.Y. March 7, 2019), *citing* 2015 WL 5697481, at *4 (Sept. 23, 2015). When the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by Listing 1.04A. *Id.* at *3, *quoting* 2015 WL 5697481, at *4.

The ALJ assessed plaintiff's medically determinable impairments as a compression fracture and radiculopathy, but determined that

> The pertinent Listings require specific findings that are not present in this particular case. For instance, the record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment.

Dkt. #6, p.210. Subsequently, the ALJ noted "varying evidence of positive straight leg

raising." Dkt. #6, p.211. More specifically, the record reveals that plaintiff was observed to have a positive straight leg raise test bilaterally on November 18, 2015 on examination at Erie County Medical Center (Dkt. #6, p.1023); a positive straight leg raise test bilaterally on December 10, 2015 on examination at Spine Surgery of Buffalo Niagara, LLC (Dkt. #6, p.435); a negative straight leg raise test bilaterally on January 28, 2016 on examination at Spine Surgery of Buffalo Niagara, LLC (Dkt. #6, p.447); a negative straight leg raise test on consultative examination on August 30, 2016 (Dkt. #6, p.569); a positive straight leg raise on the right on examination by her primary care provider on October 7, 2016 (Dkt. #6, p.977); a negative straight leg raise test on examination by her primary care provider on April 24, 2018 (Dkt. #6, p.983); and a positive straight leg raise on examination by her primary care provider on June 21, 2018. Dkt. #6, p.1001. Setting aside the lack of specificity as to whether the test was performed in both the sitting and supine positions, the straight leg raise test was not consistently positive for twelve months as required to meet Listing 1.04A. *See, e.g., Casillas*, 2020 WL 4283896, at *6. Accordingly, plaintiff has not established that she meets Listing 1.04A.

Physical RFC

Plaintiff argues that the ALJ failed to properly weigh treating source opinion evidence from plaintiff's pain management providers, Dr. Strut and Dr. Hart, and plaintiff's chiropractor, Dr. Ludwig, and instead improperly relied upon his own interpretation of bare medical findings. Dkt. #12-1, pp.23-30. Plaintiff argues that their opinions were consistent with each other and the voluminous treatment record which

demonstrated that, despite some improvement from acute pain immediately following her accident, plaintiff continued to experience severe, chronic pain which impacted her ability to function on a daily basis and required continued chiropractic treatment, lumbar intra-ligamentous injections and narcotics. Dkt. #12-1, p.26.

The Commissioner responds that the ALJ properly weighed five opinions in reaching his determination and it would be inappropriate for the court to substitute its judgment for that of the Commissioner regarding the appropriate weight to afford each provider. Dkt. #17-1, pp.21-27.

An ALJ is required to consider and evaluate every medical opinion received, regardless of its source. 20 C.F.R. § 416.927(c). Generally speaking, the ALJ will afford more weight to the opinion of a treating physician because he or she is most able to provide a detailed, longitudinal picture of the plaintiff's medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. *Moscatello v. Saul*, 18-CV-1395, 2019 WL 4673432, at *11 (S.D.N.Y.Sept. 25, 2019), *citing* 20 C.F.R. § 416.927(c)(2). Thus, where the treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be afforded controlling weight. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019), quoting 20 C.F.R. § 404.1527(c)(2). The ALJ may afford less than controlling weight to a treating physician's opinion if it fails to meet this standard, but is

required to provide good reasons for the weight assigned upon consideration of, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015). If the ALJ fails to provide a sufficient basis for discrediting the opinion of a treating physician, remand is required. *Id.*

The opinion of a treating physician is not entitled to controlling weight if it contains internal inconsistencies or contradicts the treating physician's treatment notes. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Moreover, the opinion of a treating physician need not be given controlling weight if it is not consistent with other substantial evidence in the record, including the opinions of other medical experts, such as a consulting physician. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004); *See Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) (ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that the first factor is replaced with consideration of whether the non-treating source examined the plaintiff. *White*, 414 F. Supp.3d at 383.

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's

determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support her conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to her application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006).

In the instant case, the ALJ considered the opinions of three medical providers: Mikhail Strut, M.D. and Cheryle Hart, M.D., at RES Physical Medicine & Rehab Services; and Ryan Ludwig, D.C., of Greater Buffalo Accident & Injury Chiropractic, as well as  consultative examiner David Brauer, M.D. and State Agency Medical Consultant, Jose Gonzalez-Mendez, M.D.

Dr. Brauer performed a consultative examination of plaintiff on August 30, 2016. Dkt. #6, pp.567-571. Plaintiff reported that she was able to shower and dress herself, cook twice a week and do some cleaning and wash some laundry with assistance. Dkt. #6, p.568. Dr. Brauer observed a slow, painful gait and noted that plaintiff was unable to walk on heels and toes or squat more than 20%, but needed no

assistance getting on and off the exam table. Dkt. #6, pp.568-569. Dr. Brauer noted limitations in flexion of the cervical and lumbar spine, but no sensory or strength deficits. Dkt. #6, pp.569-570. Dr. Brauer opined that plaintiff had a mild limitation in her ability to sit or stand in the same position for extended periods of time or walk long distances and a moderate to marked limitation in her ability to climb, push, pull, lift or carry heavy objects, raise objects above her head or perform activities that require full bending or squatting or full rotation of her head. Dkt. #6, p.570. The ALJ noted that Dr. Brauer's assessment was provided in non-vocationally relevant terms, but determined that, "when looking to the totality of the record, including the activities that the [plaintiff] reported to this source as being capable of performing, Dr. Brauer's opinion and assessment is interpreted as falling within the guidelines of the established residual functional capacity and is provided with more than some weight." Dkt. #6, p.212.

On January 4, 2017, Dr. Strut opined that plaintiff has not been capable of performing sedentary work 8 hours per day, 5 days per week, even if she was permitted to alternate sitting and standing, since her motor vehicle accident on October 21, 2015. Dkt. #6, pp.584-585. Dr. Strut opined that plaintiff could stand for 15 minutes at a time; walk for 10 minutes at a time; and sit for 10 minutes at a time. Dkt. #6, p.581. He also opined that plaintiff could push, pull and lift/carry 10 pounds. Dkt. #6, p.581. The ALJ concluded that only some of Dr. Strut's opinion was consistent with the record and afforded it some weight. Dkt. #6, p.212.

On June 20, 2017, Dr. Gonzalez-Mendez completed a medical evaluation of plaintiff's records. Dkt. #6, p.586. Dr. Gonzalez-Mendez "acknowledged the positive

diagnostic findings as well as positive clinical evidence, but also considered reports . . . that routinely documented improvement in range of motions and decreased pain severity over the course of the treatment." Dkt. #6, p.212. Dr. Gonzaelz-Mendez opined that the RFC of September 19, 2016 remained medically reasonable and that there was no evidence for additional limitations or restrictions. Dkt. #6, p.586. The RFC assessment by Single Decision Maker Eric Carr, dated September 19, 2016, determined that plaintiff was capable of performing light work, with frequent crouching and crawling and occasional climbing of ramps, stairs, ladders, ropes and scaffolds and occasional stooping and kneeling. Dkt. #6, p.272. The ALJ afforded significant weight to Dr. Gonzalez-Mendez' opinion. Dkt.#6, pp.212.

> On July 11, 2018, Dr. Hart reported that
>
> plaintiff has been a patient of [RES Physical Medicine & Rehab Services] since January 29, 2016. She presented with cervical, thoracic and lumbar spine pain as well as pain in the upper extremities and lower extremities bilaterally. She also had headaches and insomnia. Dr. Strut treated her with intra-ligamentous injections into her lumbar spine through 2016. These injections improved her pain and mobility, but not to the extent that would permit her to return to work full-time on a sustained basis.
>
> A lumbar MRI dated 11/23/2015 confirmed pathology consistent with [plaintiff's] subjective complaints of pain and nerve involvement. An EMG dated 12/14/2015 is consistent with left S1 radiculopathy.
>
> In addition to the monthly intra-ligamentous injections, [plaintiff] has tried chiropractic treatment, activity modification, physical therapy and pain medication. Despite continued treatment [plaintiff] is still significantly limited in her ability to lift, bend, walk and sit due to pain and restricted movement.

> In 2016, [plaintiff] tried working part-time as a customer service agent but she was not able to sit long enough, nor was she able to reach, twist or bend. She stopped working due to her limited functionality.

Dkt. #6, p.1008. Dr. Hart opined that plaintiff would be limited to lifting and carrying no more than 10 pounds on an occasional basis, and less than 5 pounds frequently; sitting and standing for no more than 10-15 minutes at a time; walking no more than 15 minutes at a time; occasionally reaching overhead bilaterally; and no stooping or crawling. Dkt. #6, p.1008. Dr. Hart further opined that severe pain would limit plaintiff to no more than 4 hours of work in an 8 hour day and that she would be off task about 10 minutes every 2 hours because of headaches, pain and distress. Dkt. #6, pp.1047-1048. On July 13, 2018, Dr. Ludwig expressed his agreement with Dr. Hart and reported that plaintiff received care on a palliative basis to keep her condition at baseline level and opined that her condition was chronic and persistent. Dkt. #6, p.1010. The ALJ concluded that the persuasiveness of the opinions from Dr. Hart and Dr. Ludwig were diminished by treatment records consistently documenting reported improvement in the severity of headaches, cervical pain levels and discomfort of her thoracic spine and leg and afforded the opinions less than some weight. Dkt. #6, p.213.

The ALJ's determination to afford the opinions of Dr. Strut and Dr. Hart less than controlling weight is predicated upon evidence of reported improvement of plaintiff's condition within the record, particularly the treatment record of William Owens, DC, of Greater Buffalo Accident & Injury Chiropractic, where plaintiff received treatment from October 30, 2015 through May 16, 2018. Dkt. #6, p.213. Similarly, Dr. Gonzalez-Mendez' medical evaluation of plaintiff relies upon, *inter alia*, chiropractic

notes from Dr. Owens indicating that plaintiff "showed improvement in ROM and decrease in pain severity over the course of treatment, with latest record of treatment on 8/1/16 indicating claimant feeling generally improved lately. Dkt. #6, p.586.

Review of plaintiff's chiropractic records reveal that although plaintiff generally reported slight or some improvement in her condition, she consistently reported constant severe or moderately severe pain bilaterally in the area of the lumbar spine. Dkt. #6, pp.598-779. For example, the August 1, 2016 progress note referenced by Dr. Gonzalez-Mendez and SDM Carr states that plaintiff reported that "she continues to feel symptomatic improvement in the degree of left and right cervical pain" and "that her pain and discomfort in the left and right area of the thoracic is showing some improvement," but "she is feeling constant severe pain bilaterally in the lower back" with stiffness, restricted movement, and inflexibility with burning and stabbing pain radiating to the top of the right foot and top of the left foot." Dkt. #6, p.678. Objectively, Dr. Owens noted a severe intensity of pain at, *inter alia*, L3 to L5 bilaterally. Dkt. #6, p.678. On November 7, 2016, Dr. Owens opined that

> Persistent symptomology continues to be evident. The condition status is chronic. The patient appears to be showing acceptable progress. There has been some slight reduction in overall symptom severity and frequency. The patient states that they experience relief following chiroporactic treatment that lasts a few days. Patient finds a decrease in pain severity and in increase in ROM ability following care. Care is currently palliative to keep current condition at a baseline level.

Dkt. #6, p.703. The last progress note from Dr. Owen, dated May 16, 2018, indicates that plaintiff reported frequent moderate pain in the neck area and upper back, as well

constant moderately severe pain in the lower back. Dkt. #6, p.779. Contrary to the ALJ's characterization of plaintiff's chiropractic records, Dr. Owen's assessment is that although "[t]here has been some improvement in symptomology . . . the patient's condition remains chronic" and "[c]are is currently palliative to keep pain at baseline level." Dkt. #6, p.779. Plaintiff transferred care to Dr. Conrad on May 29, 2018, who noted that plaintiff reported low back pain at 9/10 on the pain scale which increased with prolonged sitting. Dkt. #6, p.591. In light of these contradictions, the ALJ's reliance upon chiropractic records to undermine the opinions of Dr. Strut and Dr. Hart requires remand for the ALJ to reassess the appropriate weight to afford the opinions of plaintiff's treating providers.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #12), is granted in so far as plaintiff seeks remand and the Commissioner's motion for judgment on the pleadings (Dkt. #17), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** Buffalo, New York
March 31, 2021

    s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**